**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **10-05107-hb**
Adversary Proceeding Number: **11-80054-hb**

### AMENDED ORDER ON MOTION TO DISMISS

The relief set forth on the following pages, for a total of 20 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/11/2012**



US Bankruptcy Judge
District of South Carolina

Entered: 01/12/2012

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | C/A No. 10-05107-HB |
| Jefferson Brian Ginn and Terrena Phillips Ginn, | Adv. Pro. No. 11-80054-HB |
| Debtor(s). | |
| | Chapter 13 |
| Jefferson Brian Ginn<br>Terrena Phillips Ginn, | **AMENDED[1] ORDER ON MOTION TO DISMISS** |
| Plaintiff(s), | |
| v. | |
| CitiMortgage, Inc., as successor by merger to ABN AMRO Mortgage Group, Inc., | |
| Defendant(s). | |

**THIS MATTER** came before the Court for hearing pursuant to the Amended Motion to Dismiss filed by Defendant CitiMortgage, Inc.[2] and Plaintiffs' Objection thereto.[3]

## I. BACKGROUND AND RELEVANT FACTS

Plaintiffs' *Introduction* in the Complaint states that this adversary proceeding is an action to: object to CitiMortgage's proof of claim; object to CitiMortgage's Motion for Relief from Stay filed in Plaintiffs' bankruptcy case[4]; recover actual, statutory and punitive damages as well as costs and attorney's fees as a result of CitiMortgage's violations of state and federal law including breach of contract, fraud on the court, failure to comply with the Home Affordable Modification Program ("HAMP") and Home Affordable Refinance

---

[1] This Order corrects a minor error with regard to the details of Plaintiffs' Chapter 13 plan payments and changes internal references in footnote 41 (previously footnote 40).
[2] Doc. No. 13, filed July 26, 2011.
[3] Doc. No. 19, filed Oct. 12, 2011.
[4] *In re Ginn*, C/A No. 10-05107-HB (Bankr. D.S.C. July 19, 2010).

Program ("HARP"), violations of the Truth-in-Lending Act ("TILA"), violations of the South Carolina Unfair Trade Practices Act ("SCUTPA") and the South Carolina Consumer Protection Code ("SCCPC"), and committing the unauthorized practice of law; for injunctive relief to prohibit future violations of the Bankruptcy Code; and for an accounting of all funds CitiMortgage has received from Plaintiffs' bankruptcy estate on account of the note and mortgage that are the subject of this adversary proceeding.[5] Plaintiff's *Introduction* also states that this action is to determine the secured status of CitiMortgage and to recover actual and punitive damage for filing a false and fraudulent proof of claim.[6]

Plaintiffs organize their twenty-nine (29) page Complaint (plus attachments) into thirteen causes of action, some of which request affirmative relief. Other "causes of action" or portions thereof are actually allegations defending against the enforcement of CitiMortgage's note, mortgage and the allowance of CitiMortgage's claim.

CitiMortgage contends that all causes of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[7] CitiMortgage argues that Plaintiffs have not alleged facts that support any relief and more specifically, that Plaintiffs are precluded from revisiting the issues set forth in much of the Complaint because they contradict the confirmed Chapter 13 plan or present issues arising from the same set of facts that could or should have been raised prior to confirmation. For the reasons discussed below, the Court finds that CitiMortgage's Motion to Dismiss should be granted in part and denied in part.

---

[5] Doc. No. 1 at 1-2, ¶ 1, filed May 4, 2011.
[6] *Id.* at 2, ¶¶ 2-3.
[7] Fed. R. Civ. P. 12(b)(6) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

2

### A. PLAINTIFFS' ALLEGATIONS[8]

Plaintiffs executed a Note and Mortgage in favor of The Peoples National Bank ("Peoples") on May 31, 2002. The principal amount of the Note was $112,000. The Mortgage securing the Note describes the collateral as Plaintiffs' residence located at 1089 Martin Road, Honea Path, South Carolina in Abbeville County, and it was recorded in record book 13-Z at page 593.[9] Section 9 of the Mortgage, titled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," provides that if:

> there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a *proceeding in bankruptcy*, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority of this Security Instrument or to enforce laws or regulations), reasonable or appropriate . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property , and securing and/or repairing the property. Lender's actions can include, but are not limited to: . . . (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Securing Instrument, including its secured position in a bankruptcy proceeding. . . .
> Any amounts disbursed by Lender under this Section 9 *shall become additional debt of Borrower* secured by this Security Instrument. These amounts shall bear interest at the Note rate from the day of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.[10]

In addition, under the "Acceleration" section of the Mortgage, the Lender is "entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument."[11]

---

[8]This portion of the Order includes relevant allegations from Plaintiffs' Complaint and documents attached or referenced therein. (Doc. No. 1).
[9] *Id.* at Ex. A & B.
[10] *Id.* at Ex. A at 7, § 9 (emphasis added).
[11] *Id.* at Ex. A at 12, § 22.

3

An assignment from Peoples to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for GMAC Mortgage Corporation was recorded in record book 13-Z at Page 607 on June 6, 2002.[12] A corrective assignment from Peoples to ABN AMRO Mortgage Group, Inc. ("ABN AMRO") was also recorded on June 6, 2002, in record book 13-Z at page 607.[13] There is also an "Allonge to Mortgage Note" signed by an authorized officer for Peoples to ABN AMRO.[14]

On December 14, 2009, CitiMortgage filed a foreclosure action against Plaintiffs in the Court of Common Pleas for Abbeville County.[15] The foreclosure complaint alleges that CitiMortgage is the holder of the Note and Mortgage encumbering Plaintiffs' residence and that the loan is in default and due for June 1, 2009. Before the foreclosure was completed, Plaintiffs filed a voluntary petition for Chapter 13 relief on July 19, 2010.

Plaintiffs' Chapter 13 plan[16], referenced in the Complaint, utilized the form plan approved for use in this district.[17] The relevant provisions of Plaintiffs' amended plan are identical to those set forth in *Nix v. Household Fin. Corp. II (In re Nix)*, C/A No. 10-01103-HB, Adv. Pro. No. 11-80062, slip op. at 3-5 (Bankr. D.S.C. Jan. 5, 2012).[18] However, in the instant proceeding, the proposed plan payments were for $400 per month from Plaintiffs to

---

[12] *Id.* at Ex. C.
[13] The assignment from Peoples to ABN AMRO includes the following typed notation: "THIS IS A CORRECTIVE ASSIGNMENT WHICH IS BEING RECORDED TO REPLACE THAT ASSIGNMENT WHICH WAS RECORDED ON BOOK 13-Z AT PAGE 593 ON Jun. 6, 2002. THE MORTGAGEE WAS LISTED INCORRECTLY AND IS HEREBY CORRECTED." *Id.* at Ex. D.
[14] Doc. No. 22, C/A No. 10-05017-HB.
[15] Doc. No. 1 at Ex. G.
[16] Doc. No. 3, C/A No. 10-05107-HB (filed July 19, 2010).
[17] *See* SC LBR 3015-1 (requiring every Chapter 13 debtor to complete the form plan or to file a plan in substantial conformance with the form plan). Alterations to the form plan are permitted as follows:
    A. ADDITIONS, MODIFICATIONS, OR DELETIONS: All additions or modification to the Court's form plan . . . are highlighted by italics. Deletions are noted as "Not Applicable" or by striking through the deleted provisions. If changes are substantial or if an alternative plan is proposed, a cover sheet that summarizes and identifies the changes shall be file and served herewith.
SC LBR 3015-1, Ex. A, at ¶ I(A).
[18] Arguments in the *Nix* case were heard with this matter and their facts intersect to some degree.

4

the Chapter 13 Trustee for a period of thirty-six (36) months, to be distributed to creditors pursuant to terms therein. In addition, the portion of the plan payment distributable to CitiMortgage for the arrearage on its claim was $264 or more per month.

Prior to confirmation, CitiMortgage filed a proof of claim.[19] CitiMortgage's August 4, 2010, claim indicated that it was a secured claim, attached copies of the note, first mortgage, and allonge to mortgage note referenced above, and indicated an arrearage on the note of $15,107, presented for payment from the trustee, and a principal balance at that time of $96,506.54.[20] The attached Arrearage Statement itemized the charges included in CitiMortgage's claim. Thereafter on August 27, 2010, Plaintiffs filed an amendment to the plan for the purpose of extending the term of the plan to forty-nine (49) months.[21] The plan was confirmed without objection on October 6, 2010.[22]

On March 18, 2011, approximately six (6) months after confirmation, CitiMortgage filed a Motion for Relief from Stay.[23] This motion asserts that Plaintiffs have not made their post-petition payments in accordance with the terms of the Note, Mortgage, and Chapter 13 plan for the November 1, 2010, payment forward. Accordingly, CitiMortgage claimed that it was entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d).[24] Plaintiffs filed an Objection to this motion shortly thereafter.[25]

On March 23, 2011, Plaintiffs amended their Schedule D to indicate that CitiMortgage's debt at issue was disputed and to "reserve[] their rights to seek redress under

---

[19] POC 5-1, C/A No. 10-05107-HB, filed Aug. 4, 2010.
[20] *Id.*
[21] Doc. No. 15, C/A No. 10-05107-HB.
[22] Doc. No. 19, C/A No. 10-05107-HB.
[23] Doc. No. 1 at 8, ¶ 33; *see also* Doc. No. 22, C/A No. 10-05017-HB. The Motion for Relief from Stay was referenced in the Complaint, and it attached copies of the following items: the Note; the Allonge to Mortgage Note; the Mortgage; the Assignment of Mortgage to MERS from The Peoples Bank; and the corrective Assignment of Mortgage to ABN AMRO Mortgage Group from The Peoples Bank.
[24] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[25] Doc. No. 23, C/A No. 10-05017-HB, filed Mar. 23, 2011.

5

any applicable state or federal consumer protection law, by way of vitiation of the lien, damages, setoff or recoupment against the claim at issue, and for costs and attorney fees."[26] Around the same time, Plaintiffs sent CitiMortgage and its attorney of record a Qualified Written Request ("QWR"), pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(c).[27] Plaintiffs' QWR asks CitiMortgage to produce certain requested information relating to Plaintiffs' account.[28] Plaintiffs assert that CitiMortgage's response to their QWR, dated April 12, 2011, was insufficient. CitiMortgage's response included the production of certain documents[29] as well as answers to those questions that CitiMortgage believed it was obligated to answer under RESPA.

Thereafter, Plaintiffs filed this adversary proceeding on May 4, 2011. In their Complaint, Plaintiffs allege that this Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Plaintiffs also claim that this matter is a core proceeding as defined by 28 U.S.C. § 157 and that this is a matter

---

[26] Doc. No. 1 at 8, ¶ 37.
[27] *Id.* at Ex. E.
[28] *Id.* Reference is made to the QWR and the full content will not be repeated here, as it included approximately six (6) pages of various questions and requests.
[29] *Id.* at Ex. F. CitiMortgage's response included the following documents:
    a. a copy of the Note;
    b. a copy of the Mortgage (without Exhibit A, the legal description, attached);
    c. a "Consolidated Note Report" dated 04/13/11;
    d. a "Payment History Transaction Codes";
    e. a copy of the an Assignment of Mortgage from Peoples to ABN AMRO recorded July 26, 2002 in Book 14-B at Page 637;
    f. a copy of an Allonge to Mortgage Note from Peoples to ABN AMRO;
    g. a payment ledger for Plaintiffs' account since the filing of the petition (from July 13, 2010, to March 24, 2011);
    h. a "Representation of Printed Document" August 21, 2007 letter from ABN AMRO Mortgage to Plaintiffs advising Plaintiffs that CitiMortgage will be the new servicer of their loan effective September 15, 2007;
    i. an "Escrow Analysis Cash Flow Statements" dated 04/12/11; and
    j. three (3) Work Order Updates from Safeguard Properties for inspections performed January 12, 2011, February 11, 2011 and March 15, 2011

6

arising in a case under Title 11.[30]  Defendant has not raised any challenge to those allegations in its Motion.

### B. CAUSES OF ACTION

CitiMortgage's Motion asserts that Plaintiffs' pursuit of certain pre-confirmation matters in this adversary proceeding is precluded by confirmation of the plan. The following labeled causes of action (or portions thereof) in the Complaint[31] are based on pre-confirmation activity: 1) *Count I, objection to the proof of claim filed by CitiMortgage and that CitiMortgage lacks status of "holder"*—as to any challenge that existed pre-confirmation; 2) *Count III, violation of 11 U.S.C. §§ 105 and 506 Contempt of Court Order*[32], complaining of CitiMortgage's charging and assigning legal fees and expenses to Plaintiffs' mortgage loan—to the extent that it involves any pre-confirmation acts; 3) *Count V, fraud on the court*, complaining of CitiMortgage's representations found in its claim and its assignment of the Note and Mortgage; 4) *Count VII, securitization disclosure*—to the extent that it questions whether CitiMortgage was the holder of the Note and Mortgage prior to confirmation; 5) *Count VIII, failure to comply with HAMP/HARP* by not offering Plaintiffs a loan modification prior to initiating the pre-petition foreclosure proceeding; 6) *Count XI, SCUTPA*—it appears that both pre- and post-confirmation acts may be referenced in this cause of action; 7) *Count XII, unauthorized practice of law* with regard to CitiMortgage's preparation of the loan documents presented to Plaintiffs at the closing without the supervision of a South Carolina licensed attorney; and 8) *Count XIII, attorney*

---

[30] *Id.* at 2, ¶¶ 6-7.
[31] Plaintiffs consented to the dismissal of Count X, Fair Debt Collection Practices Act ("FDCPA") and voluntarily withdrew this cause of action. (Doc. No. 19 at 30).
[32] This cause of action likely applies only to post-confirmation acts, but this is not certain given the incorporation of prior paragraphs of the Complaint into this cause of action.

7

*preference—SCCPC*, asserting that CitiMortgage did not ascertain prior to closing Plaintiffs' preference for legal counsel to represent them in the transaction.

The following are also included in the Complaint but do not involve pre-confirmation activity: 1) *Count I, objection to the proof of claim filed by CitiMortgage and that CitiMortgage lacks status of "holder"*—to the extent that Plaintiffs challenge any post-confirmation acts, charges, fees, payment application, or transfer of ownership of the Note and Mortgage post-confirmation; 2) *Count II, violation of the automatic stay*; 3) *Count III, violation of 11 U.S.C. §§ 105 and 506 contempt of court order*—to the extent that it relates to any post-confirmation expenses, fees, or interest claimed by CitiMortgage; 4) *Count IV, breach of contract*; 5) *Count VI, demand for accounting*; 6) *Count VII, securitization disclosure*—to the extent that it relates to any post-confirmation transfer of interest in Note and Mortgage; 7) *Count IX, failure to provide identity of holder of original mortgage note pursuant to Section 1641(f)(2) of TILA and failure to respond to QWR*; and possibly 8) *Count XI, SCUTPA*—to the extent that it involves allegations of post-confirmation conduct.

## II. DISCUSSION OF APPLICABLE LAW

### A. STANDARD OF REVIEW

CitiMortgage has moved for dismissal of the Complaint for failure to state a claim upon which relief can be granted or alternatively, for a judgment on the pleadings in its favor pursuant to Fed. R. Civ. P. 12(c). The standards the Court will apply to review the Rule 12(b)(6) and Rule 12(c) motions are set forth in *Nix*, Adv. Pro. No. 11-80062, slip op. at 8-9. The Court finds that the pleadings have not closed; therefore, the Court may not

8

consider a judgment on the pleadings under Fed. R. Civ. P. 12(c).[33] Instead, the Court will review the allegations of the Complaint pursuant to the Rule 12(b)(6) standard.

### B. THE PRECLUSIVE EFFECT OF PLAN CONFIRMATION

CitiMortgage's first argument in support of its Motion asserts that the preclusive effects of plan confirmation and *res judicata*, judicial estoppel, equitable estoppel, and waiver bar Plaintiffs' pursuit of all causes of action or challenges in the Complaint arising from conduct or events that took place prior to confirmation of the plan or that existed pre-confirmation. Plaintiffs counter, asserting that the reservation of rights provisions in their confirmed plan specifically contemplate Plaintiffs' ability to assert these causes of action post-confirmation.

The facts surrounding confirmation of Plaintiffs' plan in the instant case are parallel to those considered in *Nix*. Plaintiffs were proponents of a plan explicitly providing that the creditor in question holds a claim secured by Plaintiffs' principal residence, affirming the continued application of the pre-petition agreement, addressing an acknowledged default, and requiring contractual payments to continue. As a result of the preclusive effects of *res judicata* and § 1327(a), Plaintiffs may not revisit these issues in this adversary proceeding.

The plan also contained a general reservation of rights identical to the clause discussed in *Nix*.[34] For the reasons discussed in *Nix*, the Court finds that the blanket reservation of rights in the form plan, without more, is insufficient to defeat creditor

---

[33] The Court notes that CitiMortgage's Motion included various matters outside the scope of the Complaint, including certain portions of Plaintiffs' Schedules and Plaintiffs' Objection to the Motion for Relief from Stay in the bankruptcy case. However, the Court did not consider these matters when determining its outcome on the instant Motion. Although these matters may be on the docket of the main bankruptcy case, they are not a part of the instant adversary proceeding and were not admitted into evidence. Therefore, the Court need not convert this motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d). *See McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

[34] Doc. No. 19, C/A No. 10-05107-HB ("Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor.").

CitiMortgage's assertion of *res judicata* as a defense to Plaintiffs' causes of action arising from pre-confirmation activity. *Id.* at 10-16. Just as in *Nix*, the language of the confirmed plan and the facts of this case prevent Plaintiffs from challenging CitiMortgage's claim or asserting causes of action based on pre-confirmation conduct, except for challenges to the allowance of the claim when applying the terms of the pre-petition contract between the parties as modified by the plan and only to the extent that the challenge is not contrary to matters finally determined in this case by confirmation, including disputes that could or should have been raised pre-confirmation arising from the same set of facts.

Considering the preclusive effect of the confirmation order and viewing the allegations of the Complaint in the light most favorable to the Plaintiffs, the Court finds that the following causes of action, based on allegations of pre-confirmation activity, should be dismissed in their entirety: 1) *Count V, fraud on the court*; 2) *Count VIII, failure to comply with HAMP/HARP*; 3) *Count XII, unauthorized practice of law*; and 4) *Count XIII, attorney preference—SCCPC*.

The following causes of action should be dismissed in part: 1) *Count I, objection to the proof of claim filed by CitiMortgage and that CitiMortgage lacks status of "holder"* (except as qualified above); 2) *Count III, violation of 11 U.S.C. §§ 105 and 506 Contempt of Court Order*—to the extent that it involves pre-confirmation acts, if any; 3) *Count VII, securitization disclosure*—to the extent that it is based on allegations of pre-confirmation activity; and 4) *Count XI, SCUTPA*—to the extent that it involves pre-confirmation conduct.

### C. REQUEST TO DISMISS REMAINING CAUSES OF ACTION

Plaintiffs' remaining causes of action challenged by CitiMortgage's Rule 12(b)(6) Motion on other grounds are: 1) *Count I, objection to the proof of claim filed by*

10

*CitiMortgage and that CitiMortgage lacks status of "holder"*—to the extent that it is based on post-confirmation acts; 2) *Count III, violation of 11 U.S.C. §§ 105 and 506 contempt of court order*—to the extent that it relates to any post-confirmation expenses, fees, or interest claimed by CitiMortgage; 4) *Count VI, demand for accounting*; 4) *Count VII, securitization disclosure*—to the extent that it relates to any post-confirmation transfer of interest in Note and Mortgage; 5) *Count IX, failure to provide identity of holder of original mortgage note pursuant to Section 1641(f)(2) of TILA and failure to respond to QWR*; and 6) *Count XI, SCUTPA*—to the extent that it involves post-confirmation conduct.

### 1. OBJECTION TO PROOF OF CLAIM AND THAT CREDITOR LACKS STATUS OF "HOLDER"

Regarding Plaintiffs' remaining cause of action and challenges under the objection to claim heading, the Court cannot find from a review of the Complaint and applicable law that Plaintiffs are precluded from pursing any challenges to allowance of the claim based on any post-confirmation actions of CitiMortgage, unless otherwise discussed herein.

### 2. 11 U.S.C. §§ 105 AND 506, CONTEMPT OF COURT ORDER

In this section of the Complaint, Plaintiffs assert the following:

> The actions of Defendant in charging post-petition fees and expenses as alleged herein without any prior notice to or approval by the Court constitute willful, intentional, gross and flagrant violations of the provisions of 11 U.S.C. §§ 105(a) and 506(b) and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure. . . .
> Plaintiffs allege that the conduct of the Defendant in charging and assigning legal fees and expenses to their mortgage loan "before" such fees were approved by this Court and in an amount "in excess" of the fees and expenses typically approved by this Court constitutes actions in contempt and in violation of the Chapter 13 Plan. . . .
> . . . .
> Plaintiffs allege that this Court should impose serious and severe sanctions against the Defendant for assessing and charging the Plaintiffs' loan account with legal fees and charges in excess of the amounts requested and actually approved by this Court.[35]

---

[35] Doc. No. 1 at 15-16, ¶¶ 80-81, 83.

11

                       Document      Page 13 of 20

CitiMortgage argues that this portion of the Complaint fails to state a viable claim.[36]

Section 506(b) of the Code allows oversecured creditors to add reasonable post-petition interest, costs, or charges to the amount of their secured claim.[37] These additions are based on post-petition events "such as the accrual of interest and the incurring of legal expenses that the underlying contract permits the creditor to 'shift' to the debtor." *Padilla v. GMAC Mortg. Corp. (In re Padilla)*, 389 B.R. 409, 438 (Bankr. E.D. Pa. 2008).

Some courts have "rel[ied] on 11 U.S.C. § 506(b), Fed. R. Bankr. P. 2016 and equitable and due process concerns as the basis for the holding that postpetition legal expenses added to a chapter 13 debtor's mortgage account must be disclosed and, in the view of some courts, formally allowed." *Id.* at 435 (footnote omitted). However, the court in *Padilla* went on to find that:

> Section 506(b) cannot serve as the universal Bankruptcy Code provision for evaluating whether a secured creditor has a duty to give notice and seek court approval before assessing postpetition legal expenses against the debtor's account because it is not applicable to many, if not most, secured claims that are treated in a plan under § 1322(b)(5).

*Id.* at 438; *see also Patterson v. Homecomings Fin., LLC (In re Patterson)*, 444 B.R. 564, 569 (Bankr. E.D. Wis. 2011) (describing *Padilla* as the seminal case on whether § 506(b) requires bankruptcy court approval of a mortgage creditor's post-petition fees).

---

[36] Any portion of this cause of action that may be based on pre-confirmation events is ended by the preclusive effect of the confirmed plan as discussed above and only the portion of this cause of action based on post-confirmation events remains for discussion here. This issue relates to complaints about the method of assessing the fee or expense, not to the Court's determination of the appropriate amount, which is discussed separately above.

[37] Section 506(b) provides:
> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b) (2010).

Section 506(b) is inapplicable to plans utilizing § 1322(b)(5)[38] because § 1322(e), by its very terms, trumps the applicability of § 506(b) to these Chapter 13 plans. *Id.* at 439 (citing *In re Thompson*, 372 B.R. 860, 863 (Bankr. S.D. Ohio 2007)). Section 1322(e) states that "[n]otwithstanding . . . section[] 506(b) . . . of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default *shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law*." 11 U.S.C. § 1322(e) (emphasis added). Therefore, the Court concludes that § 1322(e)—not § 506(b)—determines whether CitiMortgage's act of charging post-petition fees without an application and prior court approval was improper because Plaintiffs utilized § 1322(b)(5) in their plan's treatment of CitiMortgage's claim.[39] Consequently, the portion of Plaintiffs' cause of action asserting a violation of § 506(b) cannot survive the Motion and the Court need not address its abilities, if any, under § 105(a) to grant a claim for relief relying on a violation of § 506(b).

A remaining portion of Plaintiffs' cause of action asserts that CitiMortgage's assessment of post-petition charges also violated Rule 2016(a) of the Federal Rules of Bankruptcy Procedure. Rule 2016(a) requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file" a detailed application with the bankruptcy court. Fed. R. Bankr. P. 2016(a).[40] The court

---

[38] This provision states that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . ." 11 U.S.C. § 1322(b)(5).

[39] *But see* Fed. R. Bankr. P. 3001(c)(2) (***effective Dec. 1, 2011***) (setting forth additional requirements for filing a proof of claim in an individual debtor 's bankruptcy case and allowing sanctions for non-compliance); *see also* Fed. R. Bankr. P. 3002.1 (***effective Dec. 1, 2011***) (requiring additional notices for payment changes, fees, expenses, and charges in Chapter 13 cases "to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in debtor's plan").

[40] It has been recognized by bankruptcy courts that:
> The universal practice is that any professional seeking compensation and reimbursement from the bankruptcy estate for services provided to the estate on behalf of a debtor or a

13

in *Yancey v. CitiFinancial, Inc. (In re Yancey)*, 301 B.R. 861 (Bankr. W.D. Tenn. 2003), addressed this exact issue and concluded that Rule 2016(a) did not provide a claim for relief because "[a] private cause of action is a substantive right, not a procedural one, and . . . § 105(a) cannot, standing alone, create a private right of action." *Id.* at 868. Therefore, Plaintiffs' action asserting a violation of Rule 2016(a) independently, or in concert with § 105, cannot survive the Motion.

Finally, the Court turns its attention to Plaintiffs' assertion that CitiMortgage is in contempt of the Chapter 13 plan or this Court's confirmation order as a result of its addition of post-petition fees and expenses without any prior notice or approval by the Court. Plaintiff has not asserted that any particular plan provision attempted to alter the terms of the contract between the parties on this particular point. Therefore, applying § 1322(e) as is appropriate in this case, the Court must look to the Note and Mortgage attached to and incorporated into the Complaint to determine what was required of CitiMortgage prior to adding post-petition fees to Plaintiffs' account.[41] A review of the terms of the Mortgage does not indicate that CitiMortgage has violated its terms on this point.[42] Therefore, the post-confirmation portion of the cause of action under the heading *Count III, violation of 11 U.S.C. §§ 105 and 506, contempt of court order* should be dismissed in its entirety.

---

    trustee is subject to [Rule 2016(a)]. It is less clear whether a creditor's attorney or other professional asserting a right to compensation or reimbursement of expenses payable by the estate is also subject to the rule.

*Padilla v. GMAC Mortg. Corp. (In re Padilla)*, 389 B.R. 409, 435 n.43 (Bankr. E.D. Pa. 2008) (citations omitted).

[41] *See supra* note 38.

[42] Sections 9 and 22 specifically allow CitiMortgage to apply fees and charges to Plaintiff's account that were incurred in the bankruptcy proceedings or any other proceeding that may have significantly affected its interest in Plaintiffs' residence. Further, Section 22 of the Mortgage only requires CitiMortgage to give Plaintiffs notice prior to acceleration following Plaintiffs' breach of any covenant or agreement in the Mortgage. (Doc. No. 1, Ex. A at 12, §§ 9, 22).

14

### 3. DEMAND FOR ACCOUNTING

For the reasons set forth in *Nix*, the Court finds that Plaintiffs have an adequate remedy at law, precluding the pursuit of this action in equity. Adv. Pro. No. 11-80062, slip op. at 18-19. CitiMortgage's alleged misapplication of payments and charges for certain fees serve as the bases for Plaintiffs' causes of action for violation of the automatic stay and breach of contract causes as well as this claim. Because Plaintiffs seek the same relief in actions at law—violation of the automatic stay under § 362(k) and breach of contract—and in equity—demand for accounting—the Court concludes that the causes of action based in law are sufficient and, consequently, Plaintiffs are precluded from also asserting a demand for accounting. *See id.* at 19.

### 4. SECURITIZATION DISCLOSURE

As stated above, to the extent that this cause of action relies on allegations of pre-confirmation acts, it must be dismissed. Any residual portion of this cause of action asserting that CitiMortgage failed to prove it is the holder of the Note and Mortgage by not producing a copy of a pooling and service agreement in response to Plaintiffs' QWR, and requesting a money judgment, must be dismissed as well.

A "qualified written request" consists of written correspondence from a borrower that identifies the borrower and account at issue, and "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The QWR must request "information relating to the servicing of [the] loan . . ." *Id.* § 2605(e)(1)(A). RESPA defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and

15

> such other payments with respect to the amounts received from the borrower
> as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3). The request for a copy of a pooling and service agreement does not fall within the meaning of "servicing." *See Griffin v. Am. Home Mortg. Serv., Inc. (In re Griffin)*, Adv. Pro. No. 10-08361-rdd, 2010 WL 3928610, at *5 (Bankr. S.D.N.Y. Aug. 31, 2010) (finding that the debtors' request for a copy of the mortgage pooling and servicing agreement in their QWR was outside the "definition of information that should be responded to in the QWR" because it goes beyond information related to loan servicing and appears to be "sought to assist the debtors, perhaps, in the potential negotiation of the loan and/or challenging the bona fides of the loan as it was originated").[43]

Therefore, the Court concludes that the request for a copy of the pooling and servicing agreement and any request relating thereto are outside the scope of inquiry for a QWR. Accordingly, any remaining portion of this cause of action based on these allegations must be dismissed.

### 5. FAILURE TO PROVIDE IDENTITY OF HOLDER OF ORIGINAL MORTGAGE NOTE PURSUANT TO 15 U.S.C. § 1641(F)(2) OF TILA AND FAILURE TO RESPOND TO QWR

For the reasons set forth in *Nix*, the Court finds that Plaintiffs' assertion of damages without any supporting facts as to how they were damaged is insufficient to establish a claim for violation of RESPA. Adv. Pro. No. 11-80062, slip op. at 19-23. Therefore, even if CitiMortgage did not comply with the RESPA provisions pertaining to QWRs, 12 U.S.C.

---

[43] In support of the claim for an award of damages, Plaintiffs' Complaint alleges that CitiMortgage "failed to produce a copy of any pooling and servicing agreement in response to Plaintiffs' QWR," which is immediately followed by the allegation that CitiMortgage "has failed to prove it is the holder of the Note and Mortgage" and that "Plaintiffs are *informed, believe, and allege* that their loan **may** have been sold." *Id.* at 20-21, ¶¶ 121-23 (emphasis added).
  It is also noteworthy that courts have recently held that debtors, who are not a party to or third party beneficiary of a pooling and servicing agreement, lack standing to challenge a mortgage's chain of title based on the terms of the pooling and servicing agreement. *See, e.g.*, *Correia v. Deutsche Bank Natl. Trust Co. (In re Correia)*, 452 B.R. 319 (B.A.P. 1st Cir. 2011).

16

§ 2605, Plaintiffs failed to sufficiently allege that they suffered actual and/or statutory damages resulting from CitiMortgage's alleged RESPA violation. Accordingly, cause exists to dismiss this cause of action.

### 6. SCUTPA

For the reasons set forth in *Nix*, the Court finds that Plaintiffs' recitation of the elements of a SCUTPA claim without providing any factual basis as to what actions undergone by CitiMortgage constitute a violation of SCUTPA is insufficient to establish a claim. Adv. Pro. No. 11-80062, slip op. at 23-24. The Court also questions as a matter of law whether an alleged violation of the automatic stay, in itself, is sufficient to bring a separate claim for violation of SCUTPA. Therefore, the Court finds that Plaintiffs failed to sufficiently allege a claim for violation of SCUTPA. Consequently, cause exists for dismissal of this claim in its entirety.

### D. REMAINING CLAIMS FOR RELIEF NOT ADDRESSED IN MOTION TO DISMISS

Plaintiffs assert that confirmation of their Chapter 13 plan created a new and binding contract between themselves and CitiMortgage.[44] Plaintiffs claim that CitiMortgage breached the specific terms this contract and violated the automatic stay.[45] The court notes that CitiMortgage's Motion did not request dismissal of these causes of action. Therefore, *Count II, violation of the automatic stay* and *Count IV, breach of contract* remain for consideration by the Court.

### III. CONCLUSION

For the reasons discussed above, the following causes of action are hereby **DISMISSED**: 1) *Count I, objection to the proof of claim filed by CitiMortgage and that*

---

[44] *Id.* at 17, ¶ 90.
[45] *Id.* at 13-14, ¶¶ 68-75; 16, ¶ 88.

17

*CitiMortgage lacks status of "holder"*—as to any causes of action or challenges to the claim resulting from pre-confirmation conduct of CitiMortgage or causes of action Plaintiffs could have asserted pre-confirmation (except as indicated below); 2) *Count III, violation of 11 U.S.C. §§ 105 and 506 contempt of court order*; 3) *Count V, fraud on the court*; 4) *Count VI, demand for accounting*; 5) *Count VII, securitization disclosure*; 6) *Count VIII, failure to comply with HAMP/HARP*; 7) *Count XI, SCUTPA*—to the extent that it involves pre-confirmation conduct; 8) *Count XII, unauthorized practice of law*; and 9) *Count XIII, attorney preference—SCCPC*.

Further, Plaintiff shall have fourteen (14) days from entry of this Order to amend the Complaint to cure any pleading deficiencies for the following in a manner consistent with this Order: 1) *Count IX, failure to provide identity of holder of original mortgage note pursuant to Section 1641(f)(2) of TILA and failure to respond to QWR*; and 2) *Count XI, SCUTPA*—to the extent that it relates to any post-confirmation activity. If Plaintiffs fail to do so within that time, these causes of action are also **DISMISSED**.

Finally, CitiMortgage's Motion to Dismiss is **DENIED** as to *Count I, objection to the proof of claim filed by CitiMortgage and that CitiMortgage lacks status of "holder"*—to the extent that Plaintiffs' causes of action or challenges are based on post-confirmation conduct of CitiMortgage, or involve challenges to the allowance of the claim when applying the terms of the pre-petition contract between the parties as modified by the plan and only to the extent that the challenge is not contrary to matters finally determined in this case by confirmation, including disputes that could or should have been raised pre-confirmation arising from the same set of facts. Further, because not addressed or challenged in

CitiMortgage's Motion, the following causes of action remain a part of this adversary proceeding: 1) *Count II, violation of the automatic stay*; and 2) *Count IV, breach of contract*.

**AND IT IS SO ORDERED.**